NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-mj-00123 |
| v. | GOVERNMENT'S MOTION FOR PRETRIAL DETENTION |
| MARK T. EAGER, | |
| Defendant. | |

The United States of America, through Natalie K. Wight, United States Attorney for the

District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court

to detain defendant pending arraignment and trial.

**A.    Factual and Procedural Summary.**

Defendant was selling fentanyl nationwide as a vendor on Dark Net Markets and

Telegram.[1]  Several of his sales ended up in Portland, Oregon.  Defendant, a resident of Kearny,

---

[1]    Telegram Messenger is a globally accessible free, cross-platform, encrypted, cloud-based
and centralized instant messaging (IM) service.  The application also provides optional end-to-

**Government's Motion for Pretrial Detention**                                                    **Page 1**

New Jersey, is currently charged in a criminal complaint with the distribution of a controlled substance (fentanyl), in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).  The felony drug charge carry a maximum sentence of 20 years' imprisonment.

Homeland Security Investigations (HSI), the Portland Police Bureau (PPB), and the U.S. Attorney's Office initiated this investigation in January 2024, after an HSI agent observed a post on the dark net forum "Dread" where a vendor using the moniker "Wrseh10" was advertising free samples of "China White Synthetic Heroin."  "China White Synthetic Heroin" is often used as a description for fentanyl or fentanyl analogues.  The posting also had a reply where someone claimed a free sample obtained from Wrseh10 caused their friend's fatal overdose.  The vendor Wrseh10 wrote a formal public apology in response to the overdose post.[2]  Through the investigation, which included three controlled buys of "China White Synthetic Heroin," which resulted in "China White Synthetic Heroin" being sent to Portland, Oregon, as well as

---

end encrypted chats and video calling, VoIP, file sharing and several other features, including the ability to create a Telegram Channel.  Telegram Channels are a tool for broadcasting public messages to large audiences as they can have an unlimited number of subscribers. They offer a unique opportunity to reach people directly, sending a notification to their phones with each post. Only administrators of a Telegram Channel have the right to post.

The "Dark Net," also sometimes called the "Dark Web" is a colloquial name for a number of extensive and widely used criminal marketplaces (Dark Net Markets) operating on the Internet, which allow participants to buy and sell illegal items, such as drugs, firearms, and other hazardous materials with greater anonymity than is possible on the traditional Internet (sometimes called the "surface web," "clear web," or simply the "web").  These online market websites use a variety of technologies, including the Tor network and other encryption technologies, to ensure that communications and transactions are shielded from interception and monitoring.  Famous dark web marketplaces, such as Silk Road, AlphaBay, and Hansa (all of which have since been shut down by law enforcement), operated similar to legitimate commercial websites such as Amazon and eBay, but offered illicit goods and services.

[2]    The death is still under investigation as a possible "Len Bias" charge in which the distribution of a controlled substance results in the death of an individual.  Such a charge, if it is able to be proven, carries a mandatory minimum sentence of 20 years imprisonment.  21 U.S.C. § 841(b)(1)(C).

**Government's Motion for Pretrial Detention**                                                    **Page 2**

cryptocurrency tracing, Investigators were able to identify that two people, working together, were operating as Wrseh10, one of those individuals was defendant, a resident of Kearny, New Jersey. The "China White Synthetic Heroin" defendant was selling was in fact fentanyl.

On May 29, 2024, based on probable cause that defendant was selling fentanyl as the vendor Wrseh10 on multiple Dark Net Markets and Telegram, Investigators applied for and a U.S. Magistrate Judge in New Jersey granted two search warrants for residences associated to defendant. Those warrants were executed in Kearny, New Jersey on June 11, 2024.

When the warrant was executed on defendant's residence, Investigators found him inside his bedroom. Inside defendant's bedroom, Investigators also found and seized approximately 361 grams of powdered Fentanyl, 16 counterfeit M30 Pills, drug ledgers, cellular phones, two computers, and packaging consistent with what was delivered in the three controlled purchases mentioned above. Pictures of the seized fentanyl and packaging material are below:



///

///

**Government's Motion for Pretrial Detention**                                          **Page 3**





Defendant was arrested and advised of his constitutional *Miranda* rights. After acknowledging that he understood his rights, defendant was interviewed by Investigators. Defendant admitted that he was the vendor Wrseh10 who operated on both the "SuperMarket" Dark Net Site, as well as the Telegram shop. Defendant also admitted that as a result of his online sales of fentanyl he had earned approximately $42,000 in cryptocurrency, which Investigators were able to locate and seize. Defendant also admitted that he was using fentanyl as well.

**Government's Motion for Pretrial Detention**                                    **Page 4**

At the time of defendant's arrest he had an active warrant for robbery issued by the Hudson County, New Jersey Sheriff's Department in January 2023. When he was asked about this, defendant admitted that he was aware of the active warrant and had been hiding since it was issued in an attempt to elude law enforcement.

Based upon the nature of the charges and defendant's personal history and characteristics the government seeks the defendant's detention as a danger to the community and a risk of nonappearance.

**B.      Applicable Law.**

### 1.      Rules of Evidence Do Not Apply at Detention Hearing

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

### 2.      Rebuttable Presumption of Detention

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10

**Government's Motion for Pretrial Detention**                                                        **Page 5**

years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a

presumption that no condition or combination of conditions of release will reasonably assure the

appearance of the person as required and the safety of the community.  18 U.S.C. §

3142(e)(3)(A) and (B).  In such a case, the burden of proof shifts to the defendant to rebut the

presumption of detention.  *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986).  The

criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence;

rather it is the *risk* that a defendant will continue committing crimes while on release, such as

drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the
> danger that the defendant **might** engage in criminal activity to the
> detriment of the community.  The committee intends that the concerns
> about safety be given a broader construction than merely danger of harm
> involving physical violence.  This principal was recently endorsed in
> *United States v. Provenzano and Andretta*, in which it was held that the
> concept of 'danger' . . . extended to nonphysical harms such as corrupting
> a union.  **The committee also emphasizes that the risk that a defendant
> will continue to engage in drug trafficking constitutes a danger to the
> "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195
(Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th
Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and
dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no

condition or combination of conditions of release that will reasonably assure the appearance of

drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and
> dangerous federal offenses.  The drug offenses involve either trafficking in
> opiates or narcotic drugs, or trafficking in large amounts of other types of
> controlled substances.  It is well known that drug trafficking is carried on
> to an unusual degree by persons engaged in continuing patterns of

**Government's Motion for Pretrial Detention**                                                    **Page 6**

criminal activity.  Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated.  *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989).  Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985).  To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt.  *Id*.  Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute.  *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

**Government's Motion for Pretrial Detention**                                                    **Page 7**

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1)    the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2)    the weight of the evidence against the person;

(3)    the history and characteristics of the person, including –

   (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

   (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

## C.    Factors Supporting Detention.

The Court should detain defendant pending trial as both a danger to the community and a risk of nonappearance.  Defendant had one job – selling fentanyl.  Fentanyl is an incredible addictive, destructive, and deadly drug that has unleashed untoward devastation across the country.  At the time he was arrested on this case, defendant had an active state arrest warrant for robbery – a warrant he knew about and admitted that he was hiding from law enforcement so he would not be arrested on it.  Defendant is now pending serious federal charges in Oregon and additional charges are likely forthcoming based upon the information gathered through the

///

**Government's Motion for Pretrial Detention**                                    **Page 8**

search warrant and his interview.  Defendant has demonstrated that he is a danger to the community and a risk of nonappearance and he should be detained.

1.    **Nature and Circumstances of the Offense.**

The defendant was selling fentanyl to any willing buyer across the country.  Drug dealing, by itself, is destructive to the community and fentanyl is particularly dangerous.  Fentanyl is one of the most incredibly addictive, deadly, and destructive drugs that is devastating the community.

> Fentanyl and methamphetamine are the most significant drug threats to Oregon and Idaho.  Oregon-Idaho HIDTA (High Intensity Drug Trafficking Area) Information Sharing and Analytical Coordination Center (ISACC) predicts with confidence that fentanyl and methamphetamine will continue to be the most significant drug threats forward-looking into 2024.  Fatal and non-fatal overdoses related to both substances have continued to increase over the past several years, which includes actual and presumptive results for 2022.  All Oregon-Idaho HIDTA enforcement initiatives reported fentanyl and methamphetamine as their primary drug threats based on availability, impact on caseload, community livability, and associated crimes.
>
> Methamphetamine continues to be the primary drug identified related to property crime, while fentanyl use causes many of the fatal and nonfatal overdose incidents and quality of life issues throughout several communities.

Oregon-Idaho HIDTA 2024 Threat Assessment, June 2023, at 11.

Drug dealers like the defendant are exactly the people Congress warned us about and why they created the presumption of detention in these cases.  Drug dealers historically make their living from selling drugs – as this defendant did – and are prone to go back to it when they are released from custody.  That high risk of pretrial recidivism warrants defendant's continued pretrial detention.

///

///

**Government's Motion for Pretrial Detention**                                          **Page 9**

**2.    Weight of the Evidence.**

The weight of the evidence against the defendant is extremely strong and supports his continued detention. The proof against the defendant is summarized above – the defendant advertised drugs on both the Dark Net as well as Telegram; on three occasions he sold fentanyl, marketed as "China White Synthetic Heroin" to an undercover HSI agent based in Portland, Oregon; the cryptocurrency payments made to buy the fentanyl helped law enforcement identify the defendant as the vendor Wrseh10, as well as locate him in Kearny, New Jersey; defendant was caught with approximately 361 grams of fentanyl; the packaging materials located at defendant's residence matched what Wrseh10 was advertising for sale, as well as the packaging material that contained the fentanyl purchased by the Portland, Oregon based undercover HSI agent; and, defendant admitted selling fentanyl as the vendor "Wrseh10" on both Dark Net Markets and Telegram. The case against the defendant is strong and he should be detained.

**3.    History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants his pretrial detention. The defendant was an active fentanyl dealer who was also actively evading apprehension on an outstanding robbery warrant. Defendant does not have a legitimate job that we are aware of and does not appear to have been legitimately employed for several years. Defendant was also using fentanyl as well and has a criminal history. He should be detained.

**4.    Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendant pose to the community and his risk of going back to drug dealing even while on pretrial release. There is simply no condition or combination of

**Government's Motion for Pretrial Detention**                                              **Page 10**

conditions that the Court will impose that will sufficiently mitigate the risk that the defendant will go back to distributing drugs within the community.  The defendant should be detained.

**Conclusion**

For the reasons set forth herein, we respectfully request that the Court detain the defendant and find he poses an unacceptable risk of non-appearance at future court hearings and is a danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendant's fentanyl trafficking, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties he is facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if he was released from custody.

Based upon the above findings, the defendant should be detained pending trial.

Dated:  June 12, 2024.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney